**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LANCE ROTOLO** | **CIVIL ACTION** |
| **VERSUS** | **NO: 25-2213** |
| **ENERGY ERECTORS, INC. ET AL.** | **SECTION "H"** |

## ORDER AND REASONS

Before the Court is Defendants' Motion to Compel Arbitration (Doc. 10). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff Lance Rotolo worked as a safety coordinator for Defendants Mastec North America, Inc. ("Mastec") and Energy Erectors, Inc. ("EEI") from October 2024 until he was terminated in August 2025. Plaintiff alleges that he consistently worked in excess of 40 hours per week during his employment with Defendants, but he was not paid overtime. He further alleges that he was terminated in retaliation for raising concerns regarding overtime pay. Plaintiff alleges that Defendants Mastec, EEI, and his supervisor Miguel Gonzalez violated his rights under the Fair Labor Standards Act.

Defendants have moved to compel arbitration of Plaintiff's claims pursuant to a mutual arbitration agreement that he executed in connection

1

with his employment with Defendants ("the Arbitration Agreement"). Plaintiff opposes.

## **LEGAL STANDARD**

The question of arbitrability is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, which broadly applies to any written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction."[1] A two-step analysis governs whether parties should be compelled to arbitrate a dispute.[2] The Court must first determine whether the parties agreed to arbitrate the dispute.[3] This determination involves two separate inquiries: (1) whether there is a valid agreement to arbitrate between the parties, and, if so, (2) whether the dispute in question falls within the scope of that agreement.[4] Both inquiries are generally guided by ordinary principles of state contract law.[5] The strong federal policy favoring arbitration applies "when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope," but it does not apply "when determining whether a valid agreement exists."[6] If the Court finds the parties agreed to arbitrate, it must then proceed to the second step of the analysis and consider whether any federal statute or policy renders the claims non-arbitrable.[7]

---

[1] Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

[2] JP Morgan Chase & Co. v. Conegie *ex rel.* Lee, 492 F.3d 596, 598 (5th Cir. 2007).

[3] Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004).

[4] Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 381 (5th Cir. 2008).

[5] *See* First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

[6] *Sherer*, 548 F.3d at 381.

[7] Primerica Life Ins. Co. v. Brown, 304 F.3d 469, 471 (5th Cir. 2002).

<u>**LAW AND ANALYSIS**</u>

The parties do not dispute that there is a valid agreement to arbitrate and that Plaintiff's claims fall within the Arbitration Agreement's scope. Rather, Plaintiff opposes arbitration on two grounds: (1) Defendants are not parties to the Arbitration Agreement; and (2) Plaintiff is exempt from arbitration under the FAA's transportation worker exemption. This Court will consider each argument in turn

**A. The Arbitration Agreement Binds Defendants**

Plaintiff argues that Mastec and EEI cannot enforce the Arbitration Agreement where they are not expressly identified therein and where they have denied that Plaintiff has an employment relationship with MasTec, Inc., the only entity named in the Agreement. He further argues that Defendants have failed to identify any theory by which they, as non-signatories, can enforce the Arbitration Agreement. The Court finds these arguments to be unavailing in light of the plain terms of the Agreement.

"[T]he question of '[w]ho is actually bound by an arbitration agreement is [ultimately] a function of the intent of the parties, as expressed in the terms of the agreement.'"[8] Here, the Arbitration Agreement expressly states that it "is between Employee and MasTec, Inc., including all MasTec, Inc. subsidiaries (the "Company")."[9] Only Plaintiff signed the agreement, however, the agreement states that "BY ISSUANCE OF THIS AGREEMENT, THE COMPANY AGREES TO BE BOUND TO ITS TERMS WITHOUT ANY

---

[8] Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co., 921 F.3d 522, 530–31 (5th Cir. 2019) (quoting Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 355 (5th Cir. 2003)).

[9] Doc. 10-2.

REQUIREMENT TO SIGN THIS AGREEMENT."[10] Accordingly, by the Agreement's plain terms, both Plaintiff and Defendants, who are subsidiaries of MasTec, Inc., agreed to be bound by the Arbitration Agreement. Plaintiff has not cited to any case law supporting his theory that EEI and Mastec cannot enforce the Agreement because they are not specifically identified therein. Further, the Agreement expressly binds Defendants, and therefore, they are not non-signatories as Plaintiff suggests. Accordingly, the Court finds that Defendants are parties to the Arbitration Agreement and can enforce its terms.[11]

### B. FAA Transportation Worker Exemption

Next, Plaintiff argues that he is exempt from arbitration under Section 1 of the FAA, which provides that the FAA does not "apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."[12] The Supreme Court has interpreted the residual clause to exempt only contracts of employment of transportation workers.[13] The Court has defined "a transportation worker" as one who is "actively 'engaged in transportation' of . . . goods across borders via

---

[10] Doc. 10-2. In addition, "[t]he FAA does not expressly impose a signature requirement." Soni v. Solera Holdings, L.L.C., No. 21-10428, 2022 WL 1402046, at *4 (5th Cir. May 4, 2022); see Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1369 (11th Cir. 2005) ("[N]o signature is needed to satisfy the FAA's written agreement requirement.").

[11] See Carrillo v. ROICOM USA, LLC, 486 F. Supp. 3d 1052, 1062 (W.D. Tex. 2020) (holding that an arbitration agreement "binds ROICOM as an affiliated company of ReadyOne" where the agreement defined "'Company' as ReadyOne as well as 'affiliates or related companies' of ReadyOne"); Siefke v. Toyota Motor N. Am., Inc., No. 4:25-CV-406, 2025 WL 3461549, at *10 (E.D. Tex. Dec. 2, 2025) (holding CAS could compel arbitration where terms of use expressly provided that "Toyota and its affiliates—including CAS—can compel any dispute" to arbitration).

[12] 9 U.S.C. § 1.

[13] Cir. City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001).

the channels of foreign or interstate commerce."[14] "To decide whether a worker falls within Section 1's residual category, the Supreme Court has instructed that courts" to first identify the relevant "class of workers" to which the plaintiff belongs and then determine "whether that class of workers is engaged in foreign or interstate commerce."[15] An exempt worker "must at least play a direct and necessary role in the free flow of goods across borders."[16] The Court has advised that the inquiry should focus on the work performed by the employee rather than the industry of the employer.[17]

Plaintiff argues that his work with Defendants qualifies him as a transportation worker. Plaintiff contends that as a Safety Coordinator, he traveled between job sites across several states. As part of his job, he was tasked with ensuring that the worksites were fully stocked with necessary supplies, such as PPE. In doing so, he ordered supplies, received the ordered goods, and then transported them across state lines in his vehicle to the worksites he visited. Plaintiff argues that because he both initiated the flow of goods in interstate commerce and transported those goods himself across state lines, he is in the class of workers exempted by Section 1 of the FAA.

Defendants, on the other hand, cast Plaintiff's work duties in a different light. They argue that his primary duty was to conduct safety inspections at their electric substation and construction sites and ensure that their contractors were following safety protocols. They argue that his delivery of

---

[14] Bissonnette v. LePage Bakeries Park St., LLC, 601 U.S. 246, 256 (2024) (quoting Southwest Airlines Co. v. Saxon, 596 U.S. 450, 458 (2022)).

[15] George v. Amazon.com Servs. LLC, No. CV 4:24-CV-1063-SDJ, 2025 WL 3143598, at *3 (E.D. Tex. Nov. 10, 2025) (quoting *Saxon*, 596 U.S. at 455).

[16] Bissonnette, 601 U.S. at 56 (internal quotations omitted).

[17] *Saxon*, 596 U.S. at 455.

safety equipment when he visited worksites was incidental to his position and was more in line with delivering the tools needed for a job. They point out that Defendants are not in the business of selling PPE, and Plaintiff was therefore not delivering to customers.

The Court finds that Plaintiff takes too broad a view of the transportation worker exemption. The Supreme Court has advised that Section 1 be afforded a narrow construction.[18] While it is true that Plaintiff moved goods across state borders, the Court cannot say that he played a direct and necessary role in interstate commerce, like a railroad employee or seaman.[19] Plaintiff is in a class of workers who transports safety equipment across state lines to their employer's worksites. The goods are then used at those worksites and do not continue to move through commerce. In *Southwest Airlines Co. v. Saxon*, the Supreme Court found that workers "who load cargo on and off airplanes" are transportation workers under Section 1 of the FAA.[20] In so holding, the Court considered the employees involvement with the cargo as it moved through interstate commerce and took into consideration "the overall processes of the movement of goods."[21] Here, Plaintiff orders goods on

---

[18] *Bissonnette*, 601 U.S. at 256.

[19] *See* Rojas v. TK Commc'ns, Inc., 87 F.3d 745, 748 (5th Cir. 1996) ("[T]he exclusionary clause of § 1 of the Arbitration Act should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are.") (quoting Asplundh Tree Expert Co. v. Bates, 71 F.3d 592 (6th Cir. 1995); *George*, 2025 WL 3143598, at *3 ("[T]he residual provision is restricted to a transportation worker who performs work analogous to that of seamen and railroad employees, whose occupations are centered on the transport of goods in interstate or foreign commerce.") (internal quotations omitted).

[20] *Saxon*, 596 U.S. at 459.

[21] Wolford v. United Coal Co. LLC, 764 F. Supp. 3d 329, 338 (W.D. Va. 2025).

Defendants' behalf for use by other employees of Defendants, transports those goods to the employees, and they are utilized by the employees and cease to reenter commerce. Under these facts, Defendants' employees are the end consumers of the goods, and Plaintiff is therefore not playing a role in the "free flow of goods across borders."[22] Plaintiff's work is easily distinguishable from the cases in which courts found workers exempt. There, the workers were actively involved in the transportation of merchandise, cargo, or people across state lines.[23] This Court agrees with Defendants that Plaintiff's work was more in line with transporting tools and supplies, which other courts have found insufficient to qualify as a transportation worker under Section 1 of the FAA.[24]

---

[22] *Bissonnette*, 601 U.S. at 256; *see* Immediato v. Postmates, Inc., 54 F.4th 67, 78 (1st Cir. 2022) ("[T]he interstate movement terminated when the goods arrived at local restaurants and grocery stores."); Lopez v. Cintas Corp., 47 F.4th 428, 433 (5th Cir. 2022) ("Once the goods arrived at the Houston warehouse and were unloaded, anyone interacting with those goods was no longer engaged in interstate commerce.").

[23] *See Saxon*, 596 U.S. at 459 (holding that workers loading and unloading cargo on airplanes were transportation workers); Rittmann v. Amazon.com, Inc., 971 F.3d 904, 916 (9th Cir. 2020) (holding that last leg delivery drivers were transportation workers despite not crossing state lines where they complete the delivery of goods that Amazon has shipped across state lines); Waithaka v. Amazon.com, Inc., 966 F.3d 10, 26 (1st Cir. 2020) ("[L]ast-mile delivery workers who haul goods on the final legs of interstate journeys are transportation workers 'engaged in . . . interstate commerce,' regardless of whether the workers themselves physically cross state lines.").

[24] *See Wolford*, 764 F. Supp. 3d at 341 ("But Wolford's crossing of the state line with tools needed for his shift is not the same thing as an electrician delivering out-of-state light fixtures to consumers. The repair parts and protective equipment are not goods to be delivered to the purchasers of defendants' coal products. They are incidental to his work as an electrician ensuring the machinery is in working order."); Reed v. LTN Glob. Commc'ns, Inc., No. 1:24-CV-03649-JRR, 2025 WL 2653196, at *7 (D. Md. Sept. 16, 2025) (holding that Audio Specialist was not a transportation worker when he transported his own equipment across state lines).

Accordingly, this Court finds that Plaintiff does not belong to a class of transportation workers and is not exempt from arbitration under section 1 of the FAA.

Plaintiff has not set forth any other arguments against compelling arbitration of this matter. Accordingly, the Court finds arbitration is appropriate where the parties had an Arbitration Agreement, Plaintiff's claims fall within the Agreement's scope, and Plaintiff has not identified any federal statute or policy rendering the claims non-arbitrable. Defendant has asked the Court to stay this matter pending arbitration. Pursuant to 9 U.S.C. § 3, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." Accordingly, this matter must be stayed pending resolution of the arbitration proceedings.

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion is **GRANTED**, and this matter is **STAYED** and **ADMINISTRATIVELY CLOSED** pending arbitration.

New Orleans, Louisiana this 2nd day of April, 2026.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

8